UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JEFFREY A. NUNEZ** | **DOCKET NO. 2:24-cv-157** |
| D.O.C. # 252583 | SECTION P |
| | |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| | |
| **CALCASIEU CORRECETIONAL CENTER, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

*Consolidated with*

| | |
|---|---|
| **JEFFREY A. NUNEZ** | **DOCKET NO. 2:24-cv-334** |
| D.O.C. # 252583 | SECTION P |
| | |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| | |
| **CALCASIEU CORRECETIONAL CENTER, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## REPORT AND RECOMMENDATION

Before the Court are the original and amended civil rights complaints filed pursuant to 42 U.S.C. § 1983 by plaintiff Jeffrey A. Nunez, who is proceeding *pro se* and *in forma pauperis* in this matter. Nunez is an inmate in the custody of the Louisiana Department of Corrections ("LDOC") and is currently incarcerated at the Calcasieu Correctional Center in Lake Charles, Louisiana ("CCC"). The following are defendants in this suit: Calcasieu Correctional Center (CCC), River Bend Detention Center (RBDC), RBDC Warden Hedgeman, CCC Warden Cmdr Strength, Stitch Guillory, Sheriff's Office East Carroll Parish, Sheriff's Office Calcasieu Parish, C. Domingue (Warden CCC), Capt Barnes (RBDC Phase 1), Lt Pooh (RBDC Phase 1), Mrs. Frost (RBDC Medical Staff), Mrs. Renalds (RBDC Medical Staff Phase I) and the Second RBDC Assistant Warden.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this court.

I.     BACKGROUND

Plaintiff contends that on January 27, 2023, he was transferred from CCC to RBDC[1]. All allegations raised in this suit occurred at RBDC.

Plaintiff's main complaint is that he has been subjected to high levels of second-hand smoke at RBDC. Doc. 5, p. 3. He contends that despite the facility being listed as a non-smoking one, they are selling tobacco and smoking papers in the commissary. Doc. 5, p. 4. He alleges that officers can be seen smoking in the hallways and dorms. *Id*. He complains that despite filing grievances, nothing has been done to enforce the non-smoking policy.

He complains that he is suffering from health issues but also concedes that he has been seen and treated by the medical staff with respect to at least some of his medical complaints. *Id*. at p. 4.

Plaintiff further complains that between the dates of August 24, 2023, and September 3, 2023, the inmates were put on quarantine and guards would not come into the dorm for any reason. During this time, inmates from Q-dorm allegedly knocked a hole through the wall to come into plaintiff's dorm, P-Dorm, and began to "fight, jump and stab inmates." *Id*. at p. 5. Guards monitoring the cameras either missed or ignored the event and there were no consequences following the event.

Plaintiff alleges that on October 3, 2023, inmates held other inmates at knife point and forced them to open plaintiff's locker and take his commissary and paperwork out of it. *Id*.

---

[1] He has since returned to CCC from RBDC, where he is currently incarcerated.

Next, plaintiff alleges that on February 7, 2024, Lt. Pooh called him a snitch in front of several inmates and, as a result, plaintiff has had to relinquish his trustee status due to other inmates making threats against him for "telling on a cool guard who will bring them items from outside of jail such as smokes, food, etc." *Id*. at p. 6. Capt. Barnes showed the grievance regarding this allegation to Lt. Pooh, then deleted it. *Id*. at p. 5.

Further, plaintiff complains that the living conditions are unsanitary, as the jail is unreasonably dirty. He alleges that sickness "spreads like wildfire" due to the lack of sanitary living conditions and toilets and showers are broken for weeks at a time. *Id*.

Plaintiff alleges that there is a great fear of prison officials at RBDC.

In this complaint, plaintiff seeks monetary compensation as well as release to a rehab or drug program of his choice, and all charges dismissed when the program is complete. *Id*. at p. 7.

In his first Amended Complaint, plaintiff complains that a Public Health Inspector walked through his dorm on April 29, 2024, but inmates were not allowed to speak to him. He alleges that the inspector neglected to do a proper inspection, ignoring thick plumes of smoke, as well as other issues of concern in Phase-1, P-Dorms. Doc. 10.

In the next Amended Complaint, plaintiff raises new allegations. First, he complains that a notary is only available once a month. Doc. 11. There are no indigent supplies for inmates, specifically, stamps, envelopes, or writing materials, nor do inmates receive free calls to the public defender's office. *Id*. Finally, he complains that inmates are denied access to grievances, denied grievance numbers and that grievances are deleted without a response. *Id*.

On January 13, 2025, the undersigned ordered Nunez to file an amended complaint to cure certain deficiencies outlined in the Court's Order. Doc. 19. Plaintiff did so on January 16, 2025. He clarified that RBDC Warden Hedgeman "allows the conditions in phase one to continue,"

referring to the second-hand smoke. Doc. 20, p. 1. He has gone to RDBC Phase-1 Captain Barnes with his written and verbal complaints and alleges that Barnes refused to give the inmates smoke breaks and, therefore, the inmates continue to smoke in the non-ventilated dorms. *Id*. RBDC Lt. Pooh allegedly walks through the halls smoking, gets cigarettes from inmates and brings cigarettes from home into the jail. *Id*. Plaintiff names the "Second (RBDC) Warden/Assistant Warden" as a defendant, based on his blatant neglect of conditions forced on non-smoking inmates. *Id*. at p. 2. Plaintiff also names two members of the RBDC medical staff, Mrs. Frost and Mrs. Reynolds. He names Mrs. Frost "due to her response to the multiple medical requests filed concerning medical issues such as headaches, shortness of breath, chest pain, nausea, eye irritation, etc. caused by the living conditions." *Id*. at p. 2. He names Mrs. Reynolds "due to her direct neglect of issues filed on medical request." *Id*. Finally, Plaintiff names CCC Warden/Commander Strength as a defendant, complaining that Warden Strength transferred him to RDBC, a facility known to sell "Bugler cigarettes," despite knowing he is a non-smoker. *Id*.

I. **LAW & ANALYSIS**

A. *Frivolity Review*

Nunez has been granted leave to proceed *in forma pauperis* in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would

entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d at 1025 (failure to state a claim).

### B. Section 1983

Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. To hold the defendant liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of federal law; that is, that the defendant was a government actor. *See West v. Atkins*, 108 S. Ct. 2250, 2254–55 (1988).

### C. Claims

#### a. Secondhand Smoke

The Court should retain Plaintiff's Eighth Amendment claim that RBDC Warden Hedgeman, RBDC Assistant Warden, Lt. Pooh and Captain Barnes are responsible for exposing him to unreasonably high levels of tobacco smoke. *See generally Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993); *Murrell v. Casterline*, 307 F. App'x 778, 779 (5th Cir. 2008); *Bruce v. Little*, 568 F. App'x 283, 286 (5th Cir. 2014); *Black v. Concordia Par. Det. Ctr.*, 607 F. App'x 440, 441 (5th Cir. 2015). When construed liberally and in his favor, plaintiff plausibly alleges that he endured a sufficiently serious deprivation of health and safety and that Hedgeman, Pooh, and Barnes were deliberately indifferent to a substantial risk of serious harm to him.

Plaintiff alleges that the smoke is "so thick it is from the roof to 3ft from the floor," causing him to suffer from multiple health issues and the longer he was housed at RBDC, the worse it got. Doc. 5, p. 4.  "I have wrote the warden's here and at Calcasieu to no avail." *Id.* at p. 3; *see also* doc. 20, p. 1.  Further, Captain Barnes reads the grievances he has filed, as well as heard verbal complaints, and refuses to give inmates smoke breaks, therefore the inmates continue to smoke in the non-ventilated dorms.  Doc. 20, p. 1.  Finally, Lt. Pooh walks through the halls smoking cigarettes and would bring cigarettes from home to the facility. *Id*.  The Court will address further action with respect to this claim in a separate order.

### b. Conditions of Confinement

Plaintiff makes general complains that the living conditions at RBDC are "inhuman and unsanitary."  Doc. 5, p. 6.  He alleges that there is "dirt in thick layers across the floor," rust and mold throughout the dorms and toilets and showers are broken for "weeks at a time." *Id*.

"While the Constitution does not require that custodial inmates be housed in comfortable prisons, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded 'humane conditions of confinement' and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). To establish an Eighth Amendment violation, a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the "extreme deprivation[,]" *Shannon v. Vannoy*, 682 F. App'x 283, 285 (5th Cir. 2017), of the "minimal civilized measure of life's necessities." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). To establish deliberate indifference, the prisoner must show that the official knew of and disregarded an excessive risk to inmate health or safety; the official must have been both aware of facts from the inference could be drawn that a

substantial risk of serious harm exists, and he must have drawn the inference. *Farmer*, 511 U.S. at 837.

Despite being ordered to amend his suit to name each person who allegedly violated his rights, a description of what actually occurred or what each defendant did to violate his rights, the place and date the event occurred and a description the alleged injury sustained as a result of the alleged violation, *see* doc. 19, plaintiff failed to identify a prison official who was responsible for the conditions of confinement complained of in this suit. Therefore, this claim should be dismissed.

### c. *Failure to Protect - August 24, 2023-September 3, 2023 and October 3, 2023 Incidents*

Plaintiff alleges violence on the part of other inmates at RBDC during the time period of August 24, 2023-September 3, 2023. During this time, inmates from Q-dorm allegedly knocked a hole through the wall to come into plaintiff's dorm, P-Dorm, and began to "fight, jump and stab inmates." Doc. 5, p. 5. Guards monitoring the cameras either missed or ignored the event and there were no consequences following the event. *Id*.

He also alleges that on October 3, 2023, two inmates were held at knife point by other inmates and forced to open plaintiff's locker and take his personal belongings. *Id*.

Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates. *Johnston v. Lucas,* 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond,* 636 F.2d 1364, 1373 (5th Cir. 1981). Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. *Id*. at

837. A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Id*. at 847. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*. at 837.

Plaintiff has not alleged that any prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed prior to the incidents alleged in the complaint occurring. At best, plaintiff's claims regarding the guards missing or ignoring the camera footage sounds in negligence, but negligence "is insufficient to support a finding of liability." *Adames v. Perez*, 331 F.3d 508, 514 (5th Cir. 2003). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . ." *Alton v. Texas A&M Univ*., 168 F.3d 196, 201 (5th Cir. 1999). "A state actor's failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference." *McClendon v. City of Columbia,* 305 F.3d 314, n.8 (5th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. at 837); see *Mosley v. Anderson*, 425 F. App'x 343, 344 (5th Cir. 2011) ("To the extent that prison officials were negligent for not preventing the assault, Mosley is not entitled to relief on this basis.").

### d. Medical Care

The Court should dismiss plaintiff's claims against RBDC Medical Staff Mrs. Frost and Mrs. Renalds because Plaintiff does not plausibly allege that either defendant was deliberately indifferent. He names Frost "due to her response to the multiple medical request (sic) filed." Doc. 20, p. 2. However, he fails to specify details regarding the alleged deliberate indifference to his health or safety, including dates of requested medical visits, what occurred or did not occur as a

result, lack of medications required, etc. Similarly, he vaguely alleges that on an unknown date or dates, Mrs. Renalds neglected his medical needs by telling him to wear a mask and that there is "nothing we can do." *Id*. His allegations against Frost and Renalds are impermissibly conclusory.

### e. Access to Writing Materials, Notary, Free Phone Calls

Plaintiff complains that a notary is only available once a month, that there are no indigent supplies for inmates, including stamps, envelopes or writing materials, and that inmates must pay for phone calls to the public defender's office. Doc. 11, p. 1.

Prisoners have a fundamental constitutional right of meaningful access to the courts. *Mendoza v. Strickland*, 414 Fed. App'x 616, 618 (5th Cir. 2011) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977), abrogated by *Lewis v. Casey,* 518 U.S. 343 (1996). To provide meaningful access to courts, prisons must provide the legal materials and "tools . . . that the inmates need in order to attack their sentences, directly or collaterally." *Lewis*, 518 U.S. at 355 (internal quotations and citation omitted). The right does not guarantee any particular methodology, and prisons have "considerable" discretion in providing legal resources to prisoners. *James v. Mendoza*, No. 8-253, 2008 U.S. Dist. LEXIS 91185, 2008 WL 4858372, at *4 (S.D. Tex. Nov. 10, 2008) (citing *Lewis*, 518 U.S. at 356); *Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir. 1999)).). Prisoners who allege their right to access courts has been violated must also demonstrate actual injury, such as loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding, (*Galloway v. Nesbit*, No. 20-170, 2020 U.S. Dist. LEXIS 212421, 2020 WL 6704568, at *1 (N.D. Miss. Nov. 13, 2020) (citing *Oaks v. Wainwright,* 430 F.2d 241 (5th Cir. 1970)) resulting from denial of access to courts (*id*. (citing *Walker v. Navarro Cnty. Jail,* 4 F.3d 410, 413 (5th Cir. 1993); *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987)). "[A]n inmate cannot demonstrate the requisite actual injury for an access-to-

courts claim 'simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense[,]'" rather a prisoner must establish that his efforts to pursue a nonfrivolous action were hindered. *Brantner v. Freestone Cnty. Sheriff's Office,* No. 20-50528, 2022 U.S. App. LEXIS 15924, 2022 WL 2077960, at *3 (5th Cir. 2022) (citing *Lewis*, 518 U.S. at 351; *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019)). Without a showing of this actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Weathers v. Doe*, No. 05-54, 2008 U.S. Dist. LEXIS 35130, 2008 WL 1924231, at *2 (S.D. Tex. Apr. 29, 2008) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)) ("To meet the standing requirement, plaintiff 'must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief' . . . Plaintiff 'must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him.'").

Outside of providing a law library or legal assistance programs, a prisoner's right to access courts is satisfied when the prisoner has legal counsel for the underlying claim or cause of action for which he asserts he cannot pursue or defend. *Mendoza*, 414 Fed. App'x at 618-19 (affirming district court's decision that Plaintiff could not assert his right to access the courts was infringed in relation to his plea deal as he was represented by counsel in that federal case) (citing *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981) (dismissing a complaint for failure to state a claim because "[a]s long as a criminal defendant is represented by counsel, he will be able to present matters for decision to the court through motions filed by his attorney.")).

Plaintiff's claims regarding lack of notary services and lack of indigent writing materials fail as he is represented by appointed counsel for the state criminal charges against him. (While he does not give details regarding his criminal representation, he does complain that he is not allowed free phone calls to his public defender, therefore representing to the Court that he does, in

fact, have representation in his criminal proceedings. *See* doc. 11, p. 1, ¶ 3.) Moreover, it is clear from the multiple complaints, motions, declarations filed in this civil action that plaintiff has access to the courts.

Plaintiff's claim that his constitutional rights were violated when he and other inmates were not provided free phone calls should fail. Institutions "have a legitimate interest in defraying the costs incurred in housing and caring for" civilly committed persons. *See Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008) (explaining that when a "secure treatment facility" requires civilly committed persons to work, "it is to offset some of the cost of keeping them . . ."); *see also Ward v. Gloor,* Civil Action No. V-14-0036, 2014 U.S. Dist. LEXIS 88968, 2014 WL 2949454, at *2 (S.D. Tex. June 30, 2014) (citing *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 253-54 (4th Cir. 2005)) (explaining that "inmates do not have a constitutional right to healthcare without incurring any financial indebtedness, even if they are indigent, and they may be obligated to make partial or deferred payments as money becomes available to them in the future").

Requiring plaintiff to pay for phone calls is a condition he "would be required to meet in the outside world." *Handsaker v. Tex. Civil Commitment Ctr.,* 2020 U.S. Dist. LEXIS 100988, *17 (N.D. Tex. May 12, 2020) (citing *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997) (citing several cases for support) (holding inmates did not establish valid Eighth or Fourteenth Amendment claim where medical fee was "modest" in nature and inmates did not demonstrate they needed "the funds in their prison accounts for essential expenses"); *see also Mosley v. Foti*, Civ. A. No. 85-5374, 1986 WL 11396, at *3 (ED. La. Oct. 3, 1986) (citing *Dugar v. Coughlin*, 613 F. Supp. 849 (S.D.N.Y. 1985)) ("An inmate's right of access to the courts is not unconstitutionally infringed by reasonable charges for photocopying services.")).

While plaintiff asks this Court to conclude that RBDC's failure to provide him with free phone calls violates his constitutional rights, he has alleged no factual or legal basis supporting a finding that the failure to do so amounts to a cognizable constitutional claim. *Id. (*citing*, DeGrate v. Toney*, Civil Action No. 08-1943, 2009 WL 1309728, at *6 (W.D. La. May 11, 2009) (dismissing detainee's claim that he could not call family members because of the "excessive" cost of a phone call, where detainee did not allege that telephone access "was totally denied to . . . him" and "[e]ven indigent detainees [could] place collect calls at no expense to themselves").

### f.  *Grievances*

Plaintiff complains that he was denied access to past grievances, grievance numbers and that he has not received a response to grievances due to all being "deleted with no response." Doc. 11, p. 1.

Plaintiff's allegations related to the grievance process fail to state a claim because there is no constitutionally protected right to a prison grievance system, and the fact that a grievance was not investigated timely or resolved to his satisfaction does not implicate any constitutionally protected rights. *See Schwarzer v. Wainright*, 810 Fed. App'x 358, 360 (5th Cir. 2020) (citing *Sandin v. Conner,* 515 U.S. 472, 484 (1995)); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding that prisoners do not have a federally protected liberty interest in having grievances resolved to their satisfaction); *Alexander v. Tex. Dep't of Crim. Just.*, 951 F.3d 236, 240 (5th Cir. 2020) (affirming trial court's dismissal of inmate's claim that his grievances were mishandled or improperly denied, as prisoners have no due-process rights in the inmate grievance process); *Grogan v. Kumar,* 873 F.3d 273, 280 (5th Cir. 2017) ("[I]t is well established that prisoners have no due process rights in the inmate grievance process.") (citation omitted); *Mahogany v. Miller,* 252 F. App'x 593, 595 (5th Cir. 2007) (per curiam) (holding that plaintiff had no actionable Section

1983 claim based on prison officials' failure to process his grievances); *Edmond v. Martin*, 100 F.3d 952, 1996 WL 625331, at *1 (5th Cir. 1996) (per curiam) (holding that inmate's claim that defendant's failure to investigate his grievance "raises no constitutional issue"); *Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 U.S. Dist. LEXIS 4416, 2002 WL 432948, at *2 (N.D. Tex. March 15, 2002) ("An inmate does not have a constitutional entitlement to [a] grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation.") "Insofar as [the inmate] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous." *Geiger*, 404 F.3d at 374-5.

Plaintiff's claims based on alleged mishandling of his grievances state no constitutional violation. Accordingly, such claims should be dismissed as frivolous.

### g. Habeas Relief

In his payer for relief, plaintiff seeks "release to rehab or drug program of my choice with charges dismissed when program is completed." Doc. 5, p. 7. Such relief is not available in a civil rights action. *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir.1997). Such relief is available, if at all, in a habeas corpus action. To the extent that he maintains that his custody is pursuant to the judgment of a state court, he must seek relief in a petition for habeas corpus pursuant to 28 U.S.C. §2254; to the extent that he otherwise claims that his incarceration is in violation of the Constitution and laws of the United States, he must seek relief in a petition filed pursuant to 28 U.S.C. §2241 . In either case, he must first exhaust available state court remedies by fairly presenting the substance of his Constitutional claims to Louisiana's court system.

Since release from custody is not available in this proceeding, plaintiff fails to state a claim for which relief may be granted and therefore his request for release from custody should be dismissed for failing to state a claim for which relief may be granted.

### D. Improper Defendants

#### a. Calcasieu Parish Sheriff Stich Guillory, CCC Warden Strength, D. Domingue

Plaintiff names as defendants the Calcasieu Parish Sheriff Stich Guillory, CCC Warden Strength and Warden C. Domingue. Plaintiff is hereby advised: "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 113 S.Ct. 2443 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.,* 37 F.3d 1146, 1150 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1957 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir.), *cert. denied,* 104 S.Ct. 248 (1983). In other words, to the extent that plaintiff seeks to name supervisory officials as defendants, he must allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by that defendant.

Plaintiff does not allege that Sheriff Guillory or C. Domingue were personally involved in, or even knew of, any aspect of the situations complained of at RBDC. Moreover, his complaint that CCC Warden Strength transferred him from CCC to RBDC fails to allege that Warden Strength affirmatively participated in an act that caused a constitutional deprivation, as a prisoner has no constitutionally protected interest in a particular facility. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Young v. Quinlan*, 960 F.2d 351, 358 n. 16 (3d Cir. 1992) (a prisoner has no reasonable

expectation of being incarcerated in a particular prison) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)). Accordingly, claims against these defendants should be dismissed.

### b. *East Carroll Parish Sheriff's Office, East Baton Rouge Parish Sheriff's Office and Calcasieu Parish Sheriff's Office, Calcasieu Correctional Center & River Bend Detention Center*

According to Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether defendants can be sued in this court. Under Louisiana law, an entity must qualify as a "juridical person," which is defined as "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. Louisiana courts uniformly hold that sheriff's offices or sheriff's departments are not juridical entities. *Sipes v. City of Monroe*, 2013 U.S. Dist. LEXIS 46965, 2013 WL 1282457 at *3 (W.D. La. Mar. 28, 2013) (collecting cases).

Similarly, "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term." *Douglas v. Gusman*, 567 F.Supp.2d 877, 892 (E.D. La. 2008), citing *United States ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3rd Cir. 1973). Jails are not "persons" subject to liability under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). A jail is "not an entity, but a building." *Wetzel v. St. Tammany Parish Jail*, 610 F. Supp. 2d 545, 549 (E.D. La. 2009); *Jones v. St. Tammany Parish Jail*, 4 F.Supp. 2d 606, 613 (E.D. La. 1998) (dismissing the St. Tammany Parish Jail with prejudice). Thus, Nunez fails to state a claim on which relief may be granted against the East Carroll Parish Sheriff's Office, East Baton Rouge Parish Sheriff's Office, Calcasieu Parish Sheriff's Office, Calcasieu Correctional Center, and River Bend Detention Center.

## II. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that the following defendants be **DISMISSED**: Calcasieu Correctional Center (CCC), River Bend Detention Center (RBDC), CCC Warden Strength, Stitch Guillory, Sheriff's Office East Carroll Parish, Sheriff's Office Calcasieu Parish, C. Domingue (Warden CCC), Mrs. Frost, and Mrs. Renalds.

**IT IS FURTHER RECOMMENDED** that plaintiff's claims for failure to protect with respect to the August 24, 2023-September 3, 2023 and October 3, 2023 incidents, claims regarding the conditions of confinement at RBDC, claims related to access to courts (notary, writing materials, stamps, phone calls), grievances and medical care be **DISMISSED.**

**IT IS FURTHER RECOMMENDED** that plaintiff's request for release from custody should be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers this 27th day of October, 2025.

_____
THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE